**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DAVID AND AYA CARDENELLI,** | § | |
| **INDIVIDUALLY AND a/n/f** | § | |
| **T.C., A MINOR STUDENT** | § | |
| **Plaintiffs** | § | |
| | § | **CIVIL ACTION NO.: _____** |
| **v.** | § | |
| | § | |
| **KLEIN INDEPENDENT SCHOOL** | § | |
| **DISTRICT** | § | |
| **Defendant** | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**NOW COMES** David ("the father") and Aya ("the mother") Cardenelli, Individually and

as next friends ("a/n/f") of T.C., a minor child and student, collectively termed Plaintiffs herein, by

and through their attorney of record Martin J. Cirkiel of the law firm of Cirkiel & Associates, P.C.

complaining of and about Klein Independent School District ("KISD" or "the school district")

Defendant herein, asserting causes of action for violations of the Individuals with Disabilities

Education Act ("IDEA") and related rules, state law and administrative code provisions promulgated

thereunder, as well as Section 504 of the Rehabilitation Act of 1973.  In support thereof Plaintiff

would respectfully show the following:

**I. JURISDICTION AND VENUE**

1.      Plaintiffs brought their original claim against KISD before a Texas Education Agency

        ("TEA")  Hearing Officer alleging violations of IDEA, 20 U.S.C. § 1415(i)(2)(A) and the

        federal and state laws and regulations issued thereunder.  This Court has jurisdiction to

        address erroneous decisions made by a Texas Education Agency Hearing Officer pursuant

        to 20 U.S.C. § 1415(i)(3)(A) and 19 Texas Administrative Code ("T.A.C.") § 89.1185(p).

1

The Court also has jurisdiction to award attorneys fees and costs to the Plaintiff pursuant to 20 U.S.C. § 1415(i)(3)(B).

2.      In addition and in the alternative, this Court has jurisdiction over Plaintiffs claims pursuant to the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehab Act"), including federal regulations issued thereunder.  The Court also has jurisdiction under these causes of action to award attorneys fees and costs to the Plaintiffs pursuant to 42 U.S.C. § 2000d et seq.

3.      Venue properly lies in the Southern District of Texas pursuant to the general venue statute, 28 U.S.C. § 1391(b).

## II.  ADMINISTRATIVE EXHAUSTION

4.      In general before a party may bring a claim in federal or state court pursuant to IDEA, a party must first exhaust administrative remedies, U.S.C. §1415(1) and 19 T.A.C. § 89.1185(p). Plaintiffs have met that burden as to IDEA.

## III. THE PARTIES

5.      Plaintiff T.C. is a minor child and at the time of the incidents giving rise to this complaint, was in the care and custody of her natural parents, Aya and David Cardenelli.  They live within the Klein Independent School District in Harris County, Texas. T.C. is eligible to receive public education services from Defendant, Klein Independent School District, a public school district in the State of Texas.

6.      Defendant Klein Independent School District, is a public school district in the State of Texas. Klein ISD has previously been represented at the administrative stage by and through its attorney of record, Mr. Jeffery Rogers, Esq., of the law firm of Feldman, Rogers, Morris & Grover, L.L.P., 5718 Westheimer, Suite 1200 Houston, Texas 77057.

## IV.  NATURE OF THE ACTION AND RELIEF SOUGHT

7.      IDEA requires schools to provide a *free, appropriate public education* ("FAPE") to children
with a disability that have the need for special education and related services, commensurate
with the child's unique needs, 20 U.S.C §1400(d)(1). These requirements are both substantive
and procedural. A procedural violation may warrant a finding that the school has failed to
provide FAPE when it causes a loss of educational opportunity, as is alleged by Plaintiff in
this cause.  In addition, Plaintiff also argues substantive violations of IDEA.

8.      T.C. is a child with a disability.  Her parents reasonably believed that the services she was
being provided by KISD did not satisfy federal requirement related to IDEA and removed
her from the district on January 7, 2008, and placed her in a private facility.  Further, that
such services were so remiss that they were justified in placing their child in a private facility
shortly thereafter.  On January 7, 2009, T.C. with her parents "as next friends," and by and
through a non-attorney *Special Education Advocate,* who is associated with a law firm, filed
a complaint with the school district and Texas Education Agency ("TEA"), arguing that
KISD's various procedural and substantive failures to provide FAPE to T.C., and thereby
required the school district to reimburse the family for the costs of the private placements.
This complaint was received by the office responsible for legal services at TEA on January
14, 2009.  It is unknown when the Texas Education Agency itself actually received the
complaint.  Further, it is unknown when the school district actually received the complaint.

9.      The Texas Education Agency ("TEA") appointed the Honorable Brenda Rudd, a State of
Texas *Special Education Hearing Officer*, to hear this cause. She heard arguments and
received evidence on KISD's *Respondent's Motion to Dismiss and/or Motion for Summary*

*Judgement.*  The school district argued that the case was barred by the Texas Administrative Code ("T.A.C.") Rule, which noted that a request for due process "is deemed filed only when actually received by the office responsible for legal services at TEA." 19 T.A.C. §89.1165(a), which in this case was January 14, 2009.  As such, she determined everything prior to January 14, 2008 was barred by the one-year statutes of limitations period noted in 19 T.A.C. §89.1151( c), and issued an *Order* and dismissed the case accordingly.

10.   Plaintiffs appeal that decision and make the following general arguments.  First, that the decision if permitted to be upheld would be inequitable, based upon the theory that the late filing (if in fact it was late) was due to excusable neglect.  In addition, that T.C. should not suffer due to the fact her representation was inadequate and ineffective.

11.   In addition and in the alternative, Plaintiffs argue that the Texas Rule regarding when a *due process complaint* filed with the TEA is *deemed filed* is inconsistent with federal law in at least two main areas.  First, that IDEA generally permits notice (and the running of limitations) to begin when the complaint is mailed by a Plaintiff.   In this case, Plaintiff satisfied the federal law and rules by filing their cause within a one-year limitations period.

12.   In addition and in the alternative, even if notice is deemed to occur when the complaint is received and not when it is sent, the Texas Administrative Rule again conflicts with the federal law and rule. Specifically, the federal law and rule requires the *due process complaint* to be filed with the school district first, with a copy to the State Educational Agency ("SEA").  The TEA rule conflicts with the federal rule in that it requires the Plaintiff to file with the SEA first, and in our case the TEA, and not the school district.  This too is important, because in this case, what should control (if notice does not begin upon mailing)

is when the district received the complaint from Plaintiffs, not TEA. As it is unknown when the school district received the complaint, the Plaintiffs should have the right to seek additional evidence, whether it be in this forum, or in the administrative forum, to determine this relevant fact.

13.     In addition and again in the alternative, the Texas Administrative Rule conflicts with the federal law and rule because there is nothing in the federal law that gives the state the ability to change when and how notice occurs, only to limit the statute of limitations. The Texas Rules that states that a complaint is deemed received only when received by the TEA Legal Department, creates two issues; one legal and one factual. The legal issue is that nowhere in the federal law does the TEA have the right to require such a circuitous and time-consuming procedure. In this case, the complaint was mailed on January 7, 2009 but not received by the TEA legal Department until January 14th. The factual issue is when  was the complaint was actually received by TEA?, on Friday the 9th?, Saturday the 10th?, not Monday the 12th (it was the MLK Holiday), Tuesday the 13th?   As it is unknown when the TEA, not only the legal department received the complaint, the Plaintiffs should have the right to seek additional evidence, whether it be in this forum, or in the administrative forum, to determine this relevant fact.

14.     Plaintiffs argue that it is not fair and equitable for T.C. to lose her "day in court," due to the excusable neglect of her representation; the ineffectiveness of her representation; or that the Texas rules regarding notice are both vague and conflict with the federal law and rules in a number of manners and particulars; or that there are outstanding factual issues that require further discovery, regarding when the school district received notice of this claim or when

the TEA, not the legal department, received notice.

15.     Furthermore, and also in addition and in the alternative, even if the TEA notice provision is not deemed infirm, the TEA rule regarding the one-year limitations should not be operative in this cause, for any all of the following reasons; it is tolled due to the fact the parents did not receive their procedural safeguards in a timely manner; tolled due to the fact the violations of the school district were continuous; that the one-year limitations period in Texas is inconsistent with federal law and rules and is, in any case, irrational and leads to absurd results.

16.     It is because of any and all, of the above-referenced issues, as well as others, that Plaintiffs disagree and thus appeals the Hearing Officer's decision.  In addition, they ask that cause be remanded so that the original administrative hearing may held before a Texas Educational Agency Hearing Officer.  Alternatively, that they be permitted to take additional and supplementary evidence, in this tribunal and have their cause of action heard before this Honorable Court.

17.     In addition and in the alternative, Plaintiffs argue that the differing manner in which T.C., a child with disability, is treated as compared to other students with disabilities similarly situated by TEA rules, violates Section 504 of the Rehabilitation Act of 1973.

### IV.  FACTUAL AND PROCEDURAL RESUME

18.     In 1997, Plaintiff T.C. moved to public school and was found eligible for special education services with a qualifying condition of Specific Learning Disability.

19.     In 2003, a psychoeducational evaluation was completed by the West Orange County Consortium and T.C. was found eligible to receive Special Education services as a child with

an Emotional Disturbance. That school district completed an Admission, Review and Discharge ("ARD") Committee on or about October 30, 2003.

20.   That school district completed Full Individual Evaluation ("FIE") on or about November 12, 2003.

21.   Sometime thereafter the family moved to the Klein ISD and on or about August 30, 2004 an ARD Committee meeting was convened for T.C.  The committee reviewed the ARD Committee notes and FIE.  In doing so, the committee also learned about and considered her psychiatric history whereby T.C, received a diagnosis of *Attention Deficit Hyperactivity Disorder and Rule Out Bipolar Disorder.*

22.   The ARD Committee determined she was eligible to receive Special Education services.  It was also recommended that T.C. be placed in a self-contained class and she received many services in this Adaptive Behavior classroom.

23.   The committee also discussed T.C.'s reported unhappiness with the move to this school, her exaggerated responses to stress, and her difficulty in making and keeping friends.

24.   Her parents related that T.C. would often do her best to maintain her composure at school; despite her high level of anxiety, only to have a break-down upon reaching home.  Her parents also reported that T.C. has trouble with short term auditory memory.

25.   On September 13, 2004 a Functional Behavior Assessment ("FBA") was completed by Klein ISD and used as a basis for a Behavior Intervention Plan ("BIP") to address T.C.'s needs in the areas of Organizational Skills, Following Directions, and Personal Interaction.

26.   On September 16, 2005, a *Change of Placement* ARD Committee meeting was convened for T.C.  During this meeting her parents related various types of inappropriate behavior at

Original Complaint                                                                                                    7

home.  The committee agreed to keep T.C.'s BIP in effect until the next Annual ARD meeting.  They also discontinued her *Individualized Educational Plan* (" IEP") for Science and Social Studies but decided T.C. was to remain in AB for Math, the Resource Classroom for English and Language Arts, and be mainstreamed into the regular education environment for Science and Social Studies.

27.     On November 22, 2005 an ARD Committee meeting was convened for T.C.   Her parents reported that T.C. was experiencing sever and increased levels of anxiety at home. They also reported an increased difficulty getting T.C. to go to school at all, was having severe emotional outbursts related to homework, was not responding changes in her medication regimen made to address these new symptoms and was generally feeling "overwhelmed." Her parents related to the committee that T.C.'s psychiatrist had made a recommendation that the ARD Committee create a program to reduce T.C.'s school related anxiety and to minimize her stress.  The ARD committee introduced and accepted a new BIP.  The committee also agreed to keep T.C.'s program otherwise unchanged for the remainder of that year but move her to the Resource Classroom for English-Language Arts and Math and to provide "Co-Teach" for Science and Social Studies.

28.     On February 28, 2006 an ARD was convened.  Parents were not present but gave permission for the ARD Committee to proceed without them in attendance. T.C.'s mother did have a phone conference with committee members prior to the ARD and related T.C.'s psychiatrist's recommendation that T.C. receive instruction for Science and Social Studies in the Adaptive Behavior Classroom.  After considering Parents' input (that T.C. was evidencing an increase in depressive symptoms and more "meltdowns" at home) the ARD

committee moved T.C. back to the Adaptive Behavior Classroom and continued Related Services Counseling for her.

29. On November 27, 2007 an Admission Review and Dismissal ("ARD") Committee meeting was held for T.C.   The ARD Committee documents indicate multiple concerns (behavior issues, need for counseling, math skills, impulsivity, coping skills and social skills) about T.C.   Nevertheless, the committee's only change was to add 30 minutes of counseling per month.  Although parents brought T.C.'s psychologist to the ARD Committee meeting (and at their expense), neither the school psychologist nor any other personnel qualified to make decisions related to T.C.'s primary disability (Emotionally Disturbed) were in attendance.

30. Also, in review of the documents considered and developed by the ARD Committee on November 27, 2007, the IEP's denote that neither the *present levels of performance* ("PLOP's") nor appropriate measurable  goals and objectives were included in the ARD Committee paperwork. T.C. was offered all general education classes with the exception of her elective class with an understanding that the District would remain open to Parents' concerns that the IEP did not meet T.C.'s needs and would meet again to change the IEP at Parents' request or if the District was alerted to such a need.

31. Between November 27, 2007 and Christmas break of that year (approximately December 15, 2007) parents verbally complained to the school personnel tasked with implementing T.C.'s IEP; and to administrative personnel in positions of authority to address these types of complaints, that T.C.'s IEP's were inadequate and not being implemented. At least five emails were sent to District personnel during this same period expressing these concerns and requesting changes to the IEP.  The school failed to respond.

32.   On January 11, 2008, Parents informed District of their decision to transfer the Student to a private school in Houston.

33.   Also on January 11, 2008, the school was provided written notice, provide by T.C.'s case carrier and manager, to La Conia Banes, the school's Special Education Administrator.  A request for an ARD meeting was made by the parents in written format on this same date of January 11, 2008.  None was convened.

34.   On January 14, 2008, T.C.  formally departed from the Klein Independent School District and was placed The Tenny School,  a private school in Houston that afforded T.C. her own individual teacher in her academic courses. She struggled here and was subsequently it was suggested by her mental health providers that she be transferred to a therapeutic boarding school or residential facility.

35.   On May31, 2008 T.C. was placed at Youth Care Residential Treatment Center which is located in Draper, Utah. She remained here until her transfer to a less restrictive facility.

36.   On January 1, 2008, T.C. was transferred Youth Care Residential Treatment Center to Pineridge Academy in West Jordan, Utah,  a non-public school run by Youth Care Inc.  This facility provides a structured setting for students who completed the residential program but for whom boarding school or home placements were not appropriate (pursuant to recommendations by her professional providers).

37.   On November 13, 2008, Jillian Bonnington, an advocate at Possibilities Educational Services, submitted a written request for records to Klien ISD on behalf of the parents. This request also included a second notice of parents decision to unilaterally place T.C. in a

private school and request for reimbursement. It was faxed on November 19, 2008.

38.     On January 7, 2009 Petitioner mailed its *Request for Due Process Hearing* to the Texas
        Education Agency's Office of Legal Services. Service).  In that document, the family cited
        as as "Issues for Hearing," the following: the District's failure to meet the obligations for
        "FAPE" during the 2008/2009 School Years were; the ARD committee's failure to develop
        an IEP that comported with T.C.'s unique needs; the District's failure to have qualified
        professionals in attendance at ARD meetings; the District's failure to convene an ARD after
        receiving  both written notice of Parents' plan to unilaterally place T.C. in a private school
        and their request for an ARD meeting; the District's failure to provide any written response
        to this notice of unilateral placement and request for ARD meeting: the District's failure to
        follow  the  residential  placement  application  process  outlined  in  TEC  29.008,  TEC
        42.151(g);and, the Districts failure to hold an annual ARD meeting by November of 2008.
        At the end of the document their was an affidavit where the person sending in the *Request
        For Due Process Hearing* swore that it had also been faxed to the TEA.

39.     On January 14,  2009  the Texas Education Agency ("TEA") appointed the Honorable
        Brenda Rudd, a State of Texas *Special Education Hearing Officer* and mailed out a
        scheduling order to the parties.

40.     During the pre-hearing conference, T.C. by and through her Advocate reiterated that the
        request for a *due process hearing* was faxed to the TEA, but the Advocate was not able to
        provide  evidence of the telephone number to which the request was faxed.  Neither could
        the Advocate provide a transmission report to support the statement.

41.   On February 26, 2009, Defendant Klein Independent School District ("District") filed their *Respondent's Motion to Dismiss and /or Motion for Summary Judgement* arguing that stating that Plaintiffs' claims were generally barred by the operative *statute of limitations* as it had been received by TEA on January 14, 2009, a year after legal claims (if any) had lapsed. Further, they argued that in regard to the one claim that was within the operative limitations period, the school district had no duty to hold an annual *Admission, Review and Discharge* ("ARD") Committee meeting for T.C., once she was out of the school district.

42.   On March 5, 2009, Plaintiff, T.C. ("Student") b/n/f D.C. and A.C. ("Parent") filed *Petitioner's Opposition to Respondent's Motion to Dismiss and/or Motion for Summary Judgement*.

43.   On March 6, 2009 Respondent's replied with their *Respondent's Reply to Petitioners' Response to Respondent's Motion to Dismiss and/or Motion for Summary Judgement.*

44.   On March 8, 2009, Hearing Officer Rudd issued her *Order Of Partial Dismissal And Partial Summary Judgement* stating that Plaintiffs' claims were generally barred by the operative *statute of limitations* and that the school district had no duty to hold an annual *Admission, Review and Discharge* ("ARD") Committee meeting for T.C., once she was out of the school district. The Hearing Officer followed with a letter noting that all claims in the cause had been disposed of, by her order.

## V.  THE HEARING OFFICER ERRED AS A MATTER OF LAW

45.   Plaintiff incorporates by reference, as if fully set forth herein, all the above-referenced paragraphs.

46.     The Hearing Officer erred when she did not apply the correct legal standards in this cause and her decision omitted and did not address certain facts making her findings and legal conclusions, incorrect.

## VI. <u>CAUSE OF ACTION AND DEFENSES</u>

47.     Plaintiff incorporates by reference, as if fully set forth herein, all the above-referenced paragraphs.

A.      VIOLATIONS OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

48.     The IDEA and its implementing regulations require that each state, including its political subdivisions such as local school districts, who receive payments under the IDEA must ensure that all students with disabilities are provided a *free appropriate public education* also known as FAPE.   FAPE is defined as a program of "special education and related services . . . which are provided in conformity with the individualized education program." 20 U.S.C. § 1401(8).  To the degree that a policy or practice inhibits honest consideration of the child's unique educational needs, the school fails to provide FAPE and thus violates the IDEA. Plaintiff asserts that KISD has violated T.C.'s rights to FAPE.

49.     KISD's acts, omissions and practices, as set out in detail herein, have all, when taken together or separately, including to hold an Admission, Review and Discharge Committee meeting in the required time and manner, contributed to violating her rights pursuant to the IDEA and federal regulations promulgated pursuant thereto, the Texas Education Code and the rules promulgated by the State Board of Education.

B.      VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973

50.    At all times relevant to this Complaint, T.C. was an individual with a disability within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C § 794. Also during this period, Klein ISD received federal funding, thus making itself responsive to the requisites of this act.   Klein ISD has discriminated against Plaintiff T.C., in violation of the Rehabilitation Act by relying upon rules promulgated by the Texas Education Agency that discriminate against T.C. based upon her disability and treat her differently than other students similarly situated..

C.    THE EXCUSABLE NEGLECT OF T.C.'s LEGAL REPRESENTATIVES

51.    The acts and omissions of the special advocate, and the law firms she associated with caused T.C. to lose her opportunity to have her cause of action heard by the TEA Hearing Officer when (arguably) failing to keep evidence that the requested due process hearing was sent via facsimile to the TEA; or alternatively failed to do it in the first instance; or alternatively and in any case assured it was received by the proper TEA department within the Texas rule on limitations and further, by failing to seek discovery with both the Klein ISD and the TEA as to when they actually received a copy of the original due process complaint, whether it was by mail or facsimile.   Such acts and omissions occurred due to the excusable neglect of T.C.'s legal representatives.

D.    THE INEFFECTIVE ASSISTANCE OF REPRESENTATION

52.    The acts and omissions of the special advocate, and the law firms she associated with caused T.C. to lose her opportunity to have her cause of action heard by the TEA Hearing Officer when (arguably) failing to keep evidence that the requested due process hearing was sent via

facsimile to the TEA; or alternatively failed to do it in the first instance; or alternatively and in any case assured it was received by the proper TEA department within the Texas rule on limitations and further, by failing to seek discovery with both the Klein ISD and the TEA as to when they actually received a copy of the original due process complaint, whether it was by mail or facsimile.  Such acts and omissions occurred due to the ineffective legal and advocacy by T.C.'s representatives.

E.     THE ONE-YEAR LIMITATIONS PERIOD WAS TOLLED IN THIS CAUSE

53.    The one year limitations period was tolled in this cause due to the failure of the school to provide the family "prior written notice," a procedural violation.  The limitations period was also tolled based upon a "continuous violation" theory

F.     THE TEXAS LIMITATIONS RULE CONFLICTS WITH FEDERAL LAW

54.    The Texas law conflicts with federal law in that it s mandates state statutes of limitation for IDEA claims as two years, unless specifically addressed otherwise in state law, and the state has not correctly done so in a timely manner.

55.    The Texas law conflicts with federal law in that it permits notice upon mailing while the Texas rule deems notice upon receipt.  In addition, the federal rule requires that notice first be sent to the school district while the Texas rule requires it be sent to the TEA, a discrepancy that is relevant in this case.  Further, the Texas rule deems the filing when accepted by the TEA Legal Department rather than when received by TEA itself, also a relevant discrepancy.  Last, the terms used are vague and are unconstitutional thereby.

56.    In addition, Plaintiff argues the one-year limitations period violates the equal protection

Original Complaint                                                                                      15

requirement of the due process clause of the 14th Amendment of the U.S. Constitution, Section 504 of the Rehabilitation Act of 1973 and the related sections of the Texas Constitution; see also, Tex. Const. art. I, §3 as it treats T.C. different from other students similarly situated.

## X. <u>PRAYER</u>

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff prays that this Court receive the records of the administrative proceedings and additional and supplementary evidence as requested by Plaintiff and issue and order granting the following relief:

a       Reverse the decision and order of the Hearing Officer in whole or in part;

b.      Remand this cause back to the Texas Education Agency;

C.      or in the alternative, permit additional and supplementary discovery and set this cause for hearing and as such;

d.      render a decision that Plaintiffs rights were violated pursuant to IDEA;

e.      render a decision that Plaintiffs rights were violated pursuant to Section 504 of the Rehabilitation Act of 1973;

f.       Order the school district to reimburse the family for costs of private placement, whether it be in total or in part;

g.      provide attorney's fees and costs for Plaintiffs from the onset of this cause in the administrative forum to and through final judgment before this Court; and

h.      all other and further relief to which the Court finds the Plaintiff is justly entitled.

Respectfully submitted,

Original Complaint                                                                                      16

Cirkiel & Associates, P.C.
1901 E. Palm Valley Boulevard
Round Rock, Texas  78664
(512) 244-6658
(512) 244-6014 [Fax]

By:   _____
/s/ Martin J. Cirkiel

Mr. Martin J. Cirkiel, Esq.
State Bar No.: 00783829
Attorneys For Plaintiff