**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| D.C. AND A.C., | § | |
| INDIVIDUALLY AND a/n/f | § | |
| T.C., A MINOR STUDENT | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1714 |
| | § | |
| KLEIN INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

This is an appeal from the decision of a Texas Education Agency special education hearing officer under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*. The statute provides that a disabled child's parents may file a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6). The plaintiffs are the parents of T.C., a child with a disability. This suit arises out of the plaintiffs' dissatisfaction with the education T.C. received while attending a high school in the Klein Independent School District (the "KISD") in Spring, Texas. The plaintiffs removed her from the KISD, sent her to three different private schools outside the district, and later requested an administrative due process hearing under the IDEA. The hearing officer ruled that limitations barred all but one of the plaintiffs' claims and that the remaining claim failed on the merits. In this suit, the plaintiffs ask this court to reverse, enter judgment for them on the claim the hearing officer denied on the merits, and remand to the hearing officer to decide the claims that the hearing officer found to be time-barred. The KISD has

moved for summary judgment affirming the hearing officer's decision and dismissing the plaintiffs'
case. (Docket Entry No. 10). The plaintiffs have responded, (Docket Entry No. 15), the KISD has
replied, (Docket Entry No. 20), and the plaintiffs have filed a surreply, (Docket Entry No. 22), to
which the KISD has replied, (Docket Entry No. 26).

Based on the parties' submissions, the record, and the applicable law, this court grants the
KISD's motion for summary judgment. The hearing officer's order dismissing all claims is
affirmed. The reasons for this ruling are explained below.

## I.    Background

In the fall of 2007, T.C. was a tenth-grade student at Klein Oak High School in the KISD.
T.C. had been diagnosed with attention-deficit hyperactivity disorder ("ADHD"), which manifested
itself as severe bipolar disorder, anxiety, and an oppositional defiant disorder, and was classified as
a student with a disability. On November 27, 2007, the KISD convened an Admissions, Review &
Dismissal Committee ("ARDC") meeting for T.C. The IDEA requires an annual ARDC meeting
to determine the Individual Education Plan for each student with a disability. Annual ARDC
meetings had been held for T.C. from kindergarten through the sixth grade when she lived and
attended school in Huntington Beach, California. After her family moved to Spring, Texas, the
KISD held annual ARDC meetings for T.C. in the seventh, eighth, and ninth grades. These meetings
determined the special education plan that the school would implement for T.C. each year.

Throughout her childhood, T.C. had emotional difficulty and struggled at school. These
problems became more pronounced when she entered high school, in part because some middle-
school programs were not available in high school. T.C.'s parents were especially concerned during
the first few months of her tenth grade year, before the November 27, 2007 ARDC meeting. At least

one of T.C.'s parents attended the meeting and signed to acknowledge presence at the meeting, participation in the discussion, and understanding of what was discussed.  All those present at the meeting mutually agreed to the IEP developed for T.C.  (Admin. Rec. at 211).

The plaintiffs state that between the ARDC meeting on November 27 and T.C.'s winter break, which began around December 15, they "continued to verbally complain to school personnel about the substantive problems" with the plan developed at the meeting, about T.C.'s "ongoing emotional and educational problems at home due to unresolved issues at school," and about a failure to implement the plan developed at the meeting properly.  (Docket Entry No. 15 at 8).  The plaintiffs sent "a number of emails to school personnel during this same period expressing these concerns," but the school failed to respond to complaints.  (*Id.*).

The plaintiffs allege that T.C.'s condition worsened over the winter break.  (*Id.*).  On January 10, 2008, T.C.'s mother sent an e-mail to KISD personnel informing them that T.C. would be leaving the KISD.  The e-mail stated:

> After much deliberation we have decided to transfer [T.C.] to a private school in Houston.  We would prefer to transfer her immediately (Monday, Jan. 14).  Despite the difficulties – the enormous financial burden, and the distance – we cannot continue to let T.C. experience so much despair and anxiety   In the past two weeks she has been physically ill, throwing up, uncommunicative, and unable to function.  She was examined by the family M.D. but it is obvious that her condition is exacerbated by being so overwhelmed with her work.  This private school, Tenney School, allows for mostly one on one sessions, and small intimate group instructions.  We hope that it will be the right environment for [T.C.].
>
> I would like to talk with you tomorrow (Friday) about how we can proceed with this transfer.  How can we make it possible for [T.C] to get the credits for her course work this semester?  Her 2nd six week report card was passing.

> It is really urgent that I talk with you tomorrow morning, so that I
> know if I need to get [T.C.] to study for the finals next week, or if she
> can do something else in the other school to still receive the credits.
> If she needs to study this weekend for the finals, I will need to get all
> the pertinent study guides, etc.  Also, all missing assignments, etc.
> that will bring her grades up.  We will try to work on these over the
> weekend, if that is what [is] needed.

(Admin. Rec. at 299-300).

T.C. began attending the Tenney School on January 14, 2008.  That school is outside the KISD.  Her parents were not satisfied with her progress there and transferred her to a residential treatment facility in Draper, Utah.  (Admin. Rec. at 951-64).  In January 2009, she transferred to a therapeutic boarding school, which was also located in Utah.  T.C. has not returned to the KISD.

Two months earlier, in November 2008, T.C.'s parents retained Jillian Bonnington, an employee of Possibilities Educational Services in Southern California.  Bonnington, who is not an attorney, was hired to investigate filing a complaint with the Texas Education Agency ("TEA") and requesting an administrative due process hearing.  On November 13, 2008, Bonnington sent a letter to the KISD's attorney asking for T.C.'s educational records and reimbursement for T.C.'s private school tuition.  (Admin. Rec. at 306).  After Bonnington paid a copy and postage fee, the KISD sent her 432 pages of documents.  (Admin. Rec. at 301-304).

On January 7, 2009, with the plaintiffs' authorization, Bonnington mailed a complaint to the TEA.  (Admin. Rec. at 51-57).  The complaint asserted that the KISD had failed to:

(1) develop an appropriate education plan at the November 27, 2007 ARDC meeting;

(2) have appropriate professionals present at the November 27, 2007 meeting;

(3) develop appropriate goals and objectives at the November 27, 2007 meeting;

(4) convene an ARDC meeting after the plaintiffs requested one in January 2008;

4

(5) follow the "residential application process" outlined in the Texas Education Code;

(6) provide written responses to the notice from T.C.'s parents that they were placing T.C. in private school, including the information requested in the November 13, 2008 letter;

(7) conduct appropriate assessments of T.C.'s abilities; and

(8) hold an annual ARDC meeting in November 2008.  (*Id.*).

On January 14, 2009, the TEA faxed the plaintiffs' complaint to the KISD.  (Admin. Rec. at 50).  The TEA attached the complaint to a fax cover sheet, which stated that the TEA had received the plaintiffs' complaint on January 14, 2009.  The TEA cover sheet also informed the KISD that Bonnington would represent the plaintiffs and that Brenda Rudd, an attorney, would serve as the hearing officer for the case.  The TEA informed the KISD that the hearing officer would contact the parties to schedule a prehearing conference addressing procedural matters, that mediation services were available, and that the hearing officer's deadline for deciding the case was March 30, 2009.

The plaintiffs obtained legal counsel.  A prehearing conference was held.  The parties each submitted briefs.  On March 8, 2009, the hearing officer issued an Order of Partial Dismissal and Partial Summary Judgment.  In the order, the hearing officer held that the KISD had no duty to convene an annual review meeting in November 2008 after T.C. had been transferred outside the district's geographic area.  The hearing officer also held that limitations barred the plaintiffs' other claims.  (Admin. Rec. at 5-8).

The plaintiffs filed this case on June 4, 2009 challenging the administrative officer's decision.  (Docket Entry No. 1).  The KISD has moved for summary judgment.  Both parties have briefed the issues extensively.  These issues are analyzed below.

**II.**     **The Legal Standard**

5

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf*, *Inc. v. Nike*, *Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325. While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d

6

at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

The moving party bears a heavier burden when seeking summary judgment on a claim or defense on which it would bear the burden of proof at trial.  *Fontenot v. Upjohn Co.* , 780 F.2d 1190, 1194 (5th Cir. 1986).  "Thus, if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Id.*;  *see also Meecorp Capital Markets LLC v. Tex-Wave Industries LP*, 265 Fed. App'x 155, 157 (5th Cir. 2008) (per curiam) (unpublished) (quoting *Fontenot*).

"When a district court reviews a hearing officer's decision under the IDEA program, it receives the records of the administrative proceedings and also takes additional evidence at the request of any party."  *Houston Indep. Sch. Dist. v. V.P. ex rel. Juan P.*, --- F.3d ----, 2009 WL 2878053, at *4 (5th Cir. Sept. 9, 2009).  "When no new evidence is presented to the district court in an IDEA suit . . . 'the motion for summary judgment is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record.'"  *Loch v. Edwardsville School Dist. No. 7*, 327 Fed. App'x 647 (7th Cir. 2009) (quotation omitted).  The district court must "reach an independent decision based on a preponderance of the evidence."  *See Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 252 (5th Cir. 1997).  In reaching this decision, "courts must be careful to avoid imposing their view of preferable educational methods upon the State."  *Bd. of Ed. v. Rowley*, 458 U.S. 176, 207, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982).  State and local authorities have primary responsibility for educating children and "courts lack the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational

policy." *See Rowley*, 458 U.S. at 207-08 & n. 30, 102 S.Ct. 3034.  Although a court's review under

the IDEA is "virtually *de novo*," *V.P. ex rel. Juan P.*,  --- F.3d ----, 2009 WL 2878053, at *4, this

is not an invitation to "the courts to substitute their own notions of sound educational policy for

those of the school authorities which they review." *Adam J. ex. rel. Robert J. v. Keller Indep. Sch.

Dist.*, 328 F.3d 804, 808 (5th Cir. 2003) (quotation omitted).  Accordingly, courts place "due

weight" on the hearing officer's decision.  *V.P. ex rel. Juan P.*, --- F.3d ----, 2009 WL 2878053, at

*4.

## III.    Analysis

"One of the primary purposes of the IDEA is to ensure that children with disabilities receive

a 'free appropriate public education that emphasizes special education and related services designed

to meet their unique needs and prepare them for further education, employment, and independent

living.'"  *Id.* (quoting 20 U.S.C. § 1400(d)(1)(A)).  The KISD must "(1) provide each disabled child

within its jurisdictional boundaries with a 'free appropriate public education' tailored to his unique

needs, and (2) assure that such education is offered . . . in the least restrictive environment consistent

with the disabled student's needs."  *Id.* (quoting *Michael F.*, 118 F.3d at 247).  These requirements

are implemented by an IEP developed for each disabled student.  The IEP is developed by an "IEP

Team" composed of school administrators, teachers, and the child's parents.  In Texas, this group

is referred to as the Admissions, Review & Dismissal Committee, or ARDC.  *See* 19 TEX. ADMIN.

CODE § 89.1050.

Parents who disagree with the IEP developed by the ARDC have the right to request an

administrative due process hearing.  20 U.S.C. § 1415 (f).  The law provides parents a limited time

to request such a hearing.  The IDEA states:

8

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, *or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.*

20 U.S.C. § 1415 (f)(3)(C) (emphasis added).  Under Texas law, "[a] parent or public education agency must request a due process hearing within one year of the date the complainant knew or should have known about the alleged action that serves as the basis for the hearing request."  19 TEX. ADMIN. CODE. § 89.1151(c).  T.C.'s parents had to ask for a due process hearing within one year of the date they knew or should have known of the "alleged action that forms the basis of" their claims.        The hearing officer focused on January 10, 2008, the date when the plaintiffs sent the e-mail to the KISD stating that they were withdrawing T.C. from the district.  The hearing officer found that on January 10, 2008, T.C.'s parents "knew or should have known about the alleged action that serves as the basis for this hearing request" and "had one year from that date to request a due process hearing."  (Admin. Rec. at 6).  The record shows, however, that T.C.'s parents knew or should have known well before January 10, 2008 about the actions that form the basis of most of their claims.        The IEP at issue was developed at the ARDC meeting on November 27, 2007, which the plaintiffs attended.  Part of the plaintiffs' administrative complaint is that the appropriate professionals did not attend the meeting.  The plaintiffs would have known this on the day of the meeting.

The plaintiffs allege that the IEP set at the November 27, 2007 plan was inappropriate.  The terms of the IEP did not change after the meeting.  The record shows that before December 15, 2007, the plaintiffs were expressing their belief that the IEP was inappropriate.  The plaintiffs allege in their complaint filed in this case that between November 27 (the date of the ARDC meeting) and

December 15 (when winter break began), they had verbally complained to school personnel and administrators that the IEP was "inadequate and not being implemented," and had sent five e-mails to KISD officials "during this same period expressing these concerns and requesting changes to the IEP." (Docket Entry No. 1 at 9). The plaintiffs argue in their briefing that "the failure of the committee to better address T.C.'s emotional issues, and her psychologist's recommendations, led to even more distressing emotional reactions and failures at school, by T.C. shortly thereafter." (Docket Entry No. 15 at 8). These reactions and failures occurred before December 15, when school ended for the year-end break. The plaintiffs argue that their concerns were heightened over the winter break because of T.C.'s worsening condition and the KISD's failure to respond to their e-mails. The record does not show that the plaintiffs became aware of new problems with the IEP or the ARDC meeting after December 15, 2007. Although the plaintiffs' concerns were increased between mid-December 2007 and early January 2008, the plaintiffs knew about the allegedly inadequate and unimplemented IEP before December 15, 2007.

The record shows that the plaintiffs knew of the alleged actions that form the basis for the claims that arose out of the ARDC meeting and the IEP sometime between November 27, 2007 and December 15, 2007. The plaintiffs did not request a due process hearing until after December 15, 2008.[1] Their claims arising out of the November 27, 2007 meeting or the IEP developed at the meeting are barred by limitations.[2]

---

[1] The January 10, 2008 e-mail from the plaintiffs to the KISD stating that T.C. would be leaving the district did not request a due process hearing. (Admin. Rec. at 299-300). There is also correspondence in the record from November 13, 2008 in which the plaintiffs asked the KISD for documents and to pay for T.C.'s private school. There is no request for a due process hearing in this correspondence. (Admin. Rec. at 306).

[2] The plaintiffs have moved for additional discovery to determine when the TEA and the KISD received their complaint. (Docket Entry No. 14). Because this court does not rest the limitations analysis on either of those dates, this motion is denied as moot.

The IDEA provides only two grounds for avoiding limitations.  It states:

> The timeline described in subparagraph (C) shall not apply to a parent if the parent was prevented from requesting the hearing due to--
>
>> (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or
>>
>> (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

20 U.S.C. § 1415(f)(3)(D).  There is no evidence in the record, and the plaintiffs do not argue, that the TEA interfered with their ability to request a hearing by making misrepresentations or withheld information from them.  Neither of the two statutory exceptions applies.

The plaintiffs advance three other arguments for avoiding limitations: their late request was due to "excusable neglect"; the one-year limitations period is unconstitutional and barred by the Rehabilitation Act because it discriminates on the basis of disability; and they received ineffective assistance of counsel in the administrative proceeding.  None of these arguments avoids the statutory limitations bar.

In making the first argument, the plaintiffs rely on Federal Rule of Civil Procedure 60(b).  That rule provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for several reasons, including "mistake, inadvertence, surprise, or excusable neglect."  FED. R. CIV. P. 60(b).  To support their argument, the plaintiffs have also made a separate Rule 60(b) "motion for relief from judgment or order."  (Docket Entry No. 21).  The IDEA specifically provides for judicial review of determinations made in administrative due process hearings.  20 U.S.C. § 1415(i).  Rule 60(b) does not apply.  Even if Rule

60(b) did apply, "excusable neglect" cannot "'justify equitable tolling' of limitations" provided in the statute. *Whitt v. Stephens Cty.*, 529 F.3d 278, 284 n. 7 (5th Cir. 2008) (quoting *Fierro v. Cockrell*, 294 F.3d 674, 682 (5th Cir. 2002)).   The plaintiffs' argument that they do not seek "equitable tolling" is unpersuasive.   The relief the plaintiffs seek is to be excused from compliance with the statutory limitations period, even though they do not satisfy any of the statutory exceptions to that limitations period.   This is equitable tolling.

Courts have held that the IDEA limitations period is not subject to equitable tolling. *See Evan H. ex rel. Kosta H. v. Unionville-Chadds Ford Sch. Dist.*, No. 074990, 2008 WL 4791634, at *5 (E.D. Pa. Nov. 4, 2008) ("the limitations period can be extended only for one of the enumerated statutory exceptions."); *J.L. ex rel. J.L. v. Ambridge Area Sch. Dist.*, 622 F. Supp. 2d 257, 268-69 (W.D. Pa. 2008) ("the two exceptions specifically set forth in the statute are the exclusive exceptions to the statute of limitations."); *see also P.P. ex rel. Michael P. v. West Chester Area Sch. Dist.*, 585 F.3d 727, 736 (3d. Cir. 2009) ("In addition, tolling principles that affect the application of state statutes of limitations would presumably not affect the IDEA statute of limitations, with its express exceptions to the limitations period."); *Bell v. Board of Educ.*, No. CIV 06-1137 JB/ACT, 2008 WL 4104070 at *18-19 (D.N.M. Mar. 26 2008) (holding that a continuing violation theory could not apply under IDEA because only the two exceptions provided in the statute could avoid limitations). The commentary to the IDEA's implementing regulations is consistent in stating that "[i]t is not necessary to clarify that common-law directives regarding statutes of limitations should not override the Act or State regulatory timelines, as the commenters recommended, because the Act and these regulations prescribe specific limitation periods which supersede common law directives in this regard." 71 F.R. § 46540-01 at 46697 (August 14, 2006).

The plaintiffs' second argument is that the limitations period violates the Equal Protection Clause of the Fourteenth Amendment and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, because it discriminates on the basis of disability. The plaintiffs argue that under some IDEA provisions, a complaint is deemed made on the date it is mailed, but no such provision applies to the time limits for parents of public school students to request due process hearings. The plaintiffs argue that this difference in treatment violates Equal Protection and the Rehabilitation Act.

As an initial matter, this court did not base the holding that limitations bar many of the plaintiffs' claims on the date that the TEA received their request for a due process hearing. Whether the request was effective on January 7, 2009, when it was mailed, or on January 14, 2009, when it was received, it was too late because the plaintiffs knew of the alleged actions on which most of their complaint was based by December 15, 2007.

The plaintiffs' argument is also flawed on the merits. Interpreting the IDEA to treat a request for a due process hearing as effective only when the TEA received it would not violate the Rehabilitation Act. The Rehabilitation Act states that no qualified individual with a disability "shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). The other IDEA provisions cited by the plaintiffs refer to disputes between the federal government and participating states about money owed to the states under the IDEA. *See* 20 U.S.C. § 1412(d), (f); 34 C.F.R. §§ 300.183, 300.196. This difference does not differentiate on the basis of disability. It differentiates between states and students. This distinction does not implicate the Rehabilitation Act.

13

Finally, the plaintiffs' argument that the one-year limitations period violates the Equal Protection guarantee of the Fourteenth Amendment is unpersuasive. The argument is that the Rehabilitation Act, which applies to students who are not in special education, has a two-year statute of limitations, while the IDEA provisions at issue have a one-year statute of limitations (given the applicable Texas law). In the IDEA, Congress gave special education students statutory rights that do not apply to regular education students, including the right to a due process hearing. Congress defined the means by which that right may be enforced, including the limitations period that applied. The statutory rights that apply to special education students means that they and regular education students are not similarly situated. *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S. Ct. 3249 (1985) (stating that the Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike."). As the KISD argues, "[t]he mere fact that different periods of limitation apply to different types of injuries under different statutes fails to state a violation of equal protection." (Docket Entry No. 20 at 10).

Even if equal protection analysis did apply, disability is not a suspect classification like race, alienage, or national origin, or a quasi-suspect classification like gender. *See City of Cleburne*, 473 U.S. at 442, 105 S. Ct. 3249 (holding that mental retardation is not a suspect or quasi-suspect class); *Reickenbacker v. Foster*, 274 F.3d 974, 979 (5th Cir. 2001), *overruled on other grounds by Tennessee v. Lane*, 541 U.S. 509, 124 S. Ct. 2978 (2004) (describing *City of Cleburne* as "specifically refus[ing] to grant to disabled persons 'suspect class' status."). The IDEA limitations provision must be rationally related to a legitimate governmental purpose. The actual purpose behind the statute need not be considered so long as the statute is rationally related to some conceivable legitimate purpose. *Heller v. Doe by Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637 (1993);

14

*Nordlinger v. Hahn*, 505 U.S. 1, 15, 112 S. Ct. 2326 (1992); *Cornerstone Christian Schools v. University Interscholastic League*, 563 F. 3d 127, 139 (5th Cir. 2009).  The IDEA statute of limitations encourages prompt resolution of claims, allowing their adjudication while the evidence is fresh and accessible, and giving school districts repose from lingering claims.  *See Resolution Trust Corp. v. Seale*, 13 F.3d 850, 852-53 (5th Cir. 1994) (discussing purposes of limitations generally).  These are legitimate governmental purposes furthered by the provision.  The decision to defer to state statutes of limitations furthers state control of educational policy, which is also a legitimate governmental purpose. *Martinez v. Byrum*, 461 U.S. 321, 329-30, 103 S. Ct. 1838 (1983); *Catlin v. Sobol*, 93 F.3d 1112, 1120-21 (2d Cir. 1996).  The limitations provision is not an equal protection violation as a matter of law.[3]

The plaintiffs' final argument for avoiding limitations is that they lacked effective assistance of counsel before and during the administrative proceeding.  The IDEA provides that parents have "the right to be accompanied and advised by counsel" at due process hearings and administrative appeals.  20 U.S.C. § 1415(h)(1).  This is not equivalent to a guarantee of effective representation, such as the Sixth Amendment provides in criminal proceedings.  IDEA complainants are not entitled to have counsel appointed by the court, only to be accompanied by counsel they have retained at their own expense.  And in civil suits, where the Sixth Amendment does not operate, parties are

---

[3]  The plaintiffs make a similar argument based on article I, section 3 of the Texas Constitution, which provides: "All free men, when they form a social compact, have equal rights, and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." Tex. Const. art. I, § 3.  "The requirements for equal protection under the United States Constitution and the Texas Constitution are substantially the same." *Anthony v. Texas Dept. of Criminal Justice*, No. 01-08-00465-CV, 2009 WL 566930 (Tex. App.–Houston [1st Dist.] 2009, no pet.); *Southwestern Bell Telephone Co. v. Combs*, 270 S.W.3d 249, 272 n. 46 (Tex. App.–Amarillo 2008, pet. denied).  The record discloses no violation of the Texas Constitution.

generally "held accountable for the acts and omissions of their attorneys." *Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 396-97, 113 S. Ct. 1489 (1993).

As the plaintiffs note, the Texas Supreme Court has held that a statute providing parents the right to *appointed* counsel in an action for terminating parental rights "embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex. 2003). The Texas Supreme Court concluded that it would be a "useless gesture" to provide for appointed counsel yet "not require that counsel perform effectively." *Id.* (quotations omitted). The IDEA provides no right to appointed counsel. The other case the plaintiffs cite, *Johnson v. District of Columbia*, 190 F. Supp. 2d 34, 40 (D. D.C. 2002), involved allegations that the local education agency had interfered with the plaintiffs' counsel by conditioning a settlement agreement on waiver of any right to attorneys' fees. There is no allegation in this case that the TEA or the KISD has interfered with the plaintiffs' relationship with their counsel.

As the KISD notes, courts have also found a right to effective assistance of counsel under the Due Process Clause in civil deportation proceedings. *See Ponce-Levia v. Ashcroft*, 331 F.3d 369, 381-82 (3d Cir. 2003); *Mejia Rodriguez v. Reno*, 178 F.3d 1139, 1146 (11th Cir. 1999). But this is only because of the "exceptional life-altering character of immigration proceedings," *Ponce-Levia*, 331 F.3d at 381, and the "liberty interest" at stake. *Mejia Rodriguez*, 178 F.3d at 1146. An IDEA due process hearing, while an important statutory right to many families, does not have the same impact as an immigration proceeding or criminal prosecution. For similar reasons, the Tenth Circuit Court of Appeals has refused to find a right to effective assistance of counsel under another important remedial statute, Title VII of the Civil Rights Act of 1964. Title VII gives courts the discretion to appoint counsel on a plaintiff's request. *Nelson v. Boeing Co.*, 446 F.3d 1118, 1120-22.

16

Although Congress had shown "special concern with legal representation in Title VII actions," *Id.* at 1121 (quotations and alterations removed), the proper remedy for poor performance by an attorney was a legal malpractice suit. Unlike a criminal conviction or deportation, which are irreversible, a legal malpractice award would allow a plaintiff to recover the damages he should have won in his Title VII suit as well as damages to compensate for lost equitable relief. *Id.* The same is true of the IDEA. Ineffective assistance of counsel is not a basis for avoiding limitations.

Limitations bars all but three of the plaintiffs' claims. These three claims do not arise out of the November 27, 2007 ARDC meeting or the IED developed at that meeting. The first remaining claim is that the KISD violated the IDEA by failing to convene an annual ARDC meeting by November 27, 2008. The plaintiffs would not and should not have been aware of this claim until the end of November 2008, placing their complaint in January 2009 within the one-year limitations period. The hearing officer reviewed the merits of this claim and granted the KISD's motion for summary judgment. The record shows no error.

The IDEA requires an ARDC to review each child's IEP "periodically, but not less frequently than annually, to determine whether the annual goals for the child are being achieved." 20 U.S.C. § 1414(d)(4)(A)(i). T.C.'s last ARDC meeting at the KISD was held on November 27, 2007. If she had remained enrolled in the KISD, the district would have been required to convene another meeting by November 27, 2008. The KISD may have had responsibility to convene an ARDC meeting if T.C. had been placed in a private school by the KISD or placed by her parents at a private school within the district's geographic boundaries. But the KISD did not have a responsibility to convene an ARDC meeting after T.C.'s parents placed her in private schools outside the KISD's geographic boundaries. *See* 34 C.F.R. § 300.323(a) (requiring each district to

have an IEP "for each child with a disability *within its jurisdiction*." (emphasis added)); 34 C.F.R. § 300.132 (giving a district, or Local Educational Agency ("LEA"), obligations with respect to "children with disabilities who are enrolled by their parents in private, including religious, elementary schools and secondary schools *located in the school district* served by the LEA." (emphasis added)).   The KISD is entitled to summary judgment on the plaintiffs' claim that an ARDC meeting should have been held in November 2008.   The KISD had no obligation to hold an ARDC meeting for T.C. after January 14, 2008, when her parents moved her to a private school outside the district's jurisdiction.

The second remaining claim is that the KISD should have convened an ARDC meeting based on a request the plaintiffs assert they made on January 11, 2008.   *See* 19 Tex. Admin. Code § 89.1045 ("A parent may request an ARD committee meeting at any mutually agreeable time to address specific concerns about his or her child's special education services.").   This apparently refers to the e-mail T.C.'s mother sent to KISD on January 10, 2008 notifying the district that T.C. would be enrolling in private school.   This e-mail does not, however, contain a request for an ARDC meeting.   It raises the issue of T.C. receiving credit for KISD coursework despite her transferring to private school.   It does not discuss T.C.'s special education program in the KISD.   The hearing officer did not consider the merits of this claim because she found that any claims accruing before January 14, 2008 were time-barred.   Even if the request was timely received, however, an independent review of the administrative record shows that the claim is without merit.   *See Michael F.*, 118 F.3d at 252 (directing district courts in IDEA case to "reach an independent decision based on a preponderance of the evidence.").   Because T.C.'s parents placed her in private school outside the KISD beginning on January 14, 2008, the KISD had no obligation to convene an ARDC after

18

that date.  *See* 34 C.F.R. § 300.323(a); 34 C.F.R. § 300.132.[4]  The third remaining claim is based on

the KISD's failure to provide all the records the plaintiffs requested in Bonnington's November 13,

2008 letter.  This claim is not time-barred.  There is no evidence, however, and the plaintiffs did not

argue in their briefing before the hearing officer or this court, that the KISD failed to turn over any

of the records Bonnington requested.  The KISD is entitled to summary judgment on this claim.

## IV.    Conclusion

The KISD's motion for summary judgment is granted.  The plaintiffs' Rule 60(b) motion and

motion for discovery are denied.  All the claims are dismissed, with prejudice.

SIGNED on May 5, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[4]  To the extent the plaintiffs' claim relating to the "residential application process" is based on the January
10, 2008 or November 13, 2008 letters, the KISD is still entitled to summary judgment on that claim.  The
two statutory provisions cited by the plaintiffs, TEX. EDUC. CODE §§ 29.008, 42.151(g), provide for state
funding when a school district places a student in a private facility.  Because the KISD did not place T.C. in
any of the private schools she attended, these provisions do not apply.